527.23123-34/12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FIRST NATIONAL INSURANCE COMPANY OF )
AMERICA as subrogee of AUNT MARTHA'S )
YOUTH SERVICE CENTER, )
) Case No.  08-cv-002655
Plaintiff, )
) Judge James F. Holderman
vs. )
) Magistrate Judge Nan R. Nolan
)
JANSMA CONSTRUCTION COMPANY, )
)
Defendant. )

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant, Jansma Construction Company ("Jansma") by its attorneys, Tribler Orpett &

Meyer, P.C., state the following as its memorandum of law submits this memorandum of law in

support of its motion to dismiss:

### INTRODUCTION

On or about May 8, 2008, First National Insurance Company of America ("First

National") as subrogee of Aunt Martha's Youth Service Center ("Aunt Martha's") filed a

complaint against Jansma.  The complaint seeks to hold Jansma liable for damages arising out of

a renovation project in which the plaintiff's subrogor Aunt Martha's contracted with Jansma for

the performance of work pursuant to an agreement.  (See copy of plaintiff's complaint attached

as **Exhibit A**.)  First National, a corporation duly organized under the laws of the State of

Washington, filed this complaint on behalf of Aunt Martha's, an Illinois corporation. First

National seeks relief against Jansma for 1) negligence, 2) breach of expressed and/or implied

warranty, and 3) breach of contract.

# ARGUMENT

Fed. R. Civ. P. 12 provides that a defendant may raise certain defenses by motion in lieu of answer. In evaluating a motion to dismiss the court assumes that the factual allegations of the complaint are true. Arabian v. Nelson, 507 U.S. 3049, 351 (1993). "Federal Courts are courts of limited jurisdiction, constrained by the limits of what Congress has chosen to invest in them," Bank of Nova Scotia v. S&W Berisforz, Inc., 753 F.Supp. 237, 238 (in the Illinois 1990). In this case, it is apparent from the face of the complaint that this court lacks subject matter jurisdiction over the case as the plaintiff erroneously seeks diversity jurisdiction. Fed. R. Civ. P. 17 requires that only the real party in interest may prosecute an action. Fidelity National Title Ins. v. Intercounty National Title Ins., 2001 WL 58949 (N.D. 2001). The plaintiff has failed to allege that a complete subrogation has occurred. In the absence of a complete subrogation, the plaintiff, as an insurer, stands in the shoes of its insured and has no greater rights than that of its insured. Since Aunt Martha's is an Illinois corporation and Jansma an Illinois corporation, there can be no diversity.

Moreover, even assuming that First National is the real party in interest, the complaint clearly fails to state claims upon which relief may be granted. The plaintiff ignores the *Moorman Doctrine* in seeking to recovery purely economic damages in tort and under multiple theories in contract including breach of express warranty, breach of implied warranty, and breach of contract even though the plaintiff was not a party to any agreement or contract and has no standing to sue. Therefore, the plaintiff's complaint fails to state a basis upon which relief can be granted and should be dismissed with prejudice.

A.    **THE COMPLAINT MUST BE DISMISSED BECAUSE THE PLAINTIFF IS NOT THE REAL PARTY IN INTEREST AND THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS MATTER.**

Plaintiff asserts that this court has jurisdiction over this matter pursuant to 28 USC § 1332. Diversity jurisdiction is based on the citizenship of the real party in interest. Navaro Savings Ass'n v. Lee, 464 U.S. 58 (1980).

When subject matter jurisdiction is asserted based on diversity of citizenship, there must be complete diversity. "The plaintiff must satisfy the diversity requirements for the defendant or else encounter dismissal". Camel v. Hill-Rom Company, Inc., 108 F.3d 799, 805 (7th Cir. 1997). In the present case, the plaintiff asserts as subrogee of Aunt Martha's that it is entitled to seek the jurisdiction of this court under the diversity statue. This claim is erroneous as this court has previously found that under Fed. R. Civ. P. 17(a) every action must be prosecuted by the real party in interest. Krueger v. Cartwright, 996 F.2d 928, 931 (7th Cir. 1993). In this case, the plaintiff, a Washington corporation, has not made sufficient allegations to show it is the real party in interest despite being the alleged insurer of Aunt Martha's.

In insurance cases, "the insurer will be found to be the real party in interest when there has been a complete subrogation of insured's rights to him." Amour Pharmaceuticals Company v. Home Insurance Company, 60 FRD 592, 594 (N.D. Ill. 1973); See United States v. Aetna Surety Company, 338 U.S. 366, 380-81 (1949). Complete payment of insured's claims fulfills the subrogation requirement. Id. Clearly Aunt Martha's, as an Illinois corporation, could not sue Jansma, also an Illinois corporation, and seek diversity jurisdiction of this court. In this case, plaintiff seeks to avoid state litigation by alleging that it is the real party in interest and stands in the shoes of its insured. However, a review of the plaintiff's complaint finds no allegation that a

complete subrogation has occurred, and therefore the plaintiff's as the real party in interest is not of record and its complaint should be dismissed.

In Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 2001 WL 58949 (N.D. Ill.), the Court last considered the very issue that arises in the instant case. In Fidelity, an insurer brought suit against a defendant for the recovery of loses rising out of a breach of a real estate contract. The plaintiff in Fidelity, as in the case at bar, sought diversity jurisdiction as a subrogee of its insured. Id. The Defendants in the matter filed a motion to dismiss arguing that the Plaintiff was not a real party in interest.

In denying the motion to dismiss, the court found that there was evidence that a "complete subrogation" had occurred. The Court found that the plaintiff had pleading sufficient allegations to establish itself as the real party in interest. Id. at *6. The Court found specifically that the plaintiff had plead that it had "(1) deposited funds into the account of escrow depositors and (2) that the plaintiff had taken assignment of all their right, title and interest in their claims." Id. In the instant complaint, the plaintiff made no such allegations that it was entitled to stand in the shoes of its insured due to a complete subrogation. Consequently, in the absence of such allegations, First National's status may not be that of a real party in interest under Fed. R. Civ. P. 17(a). Therefore, this court should find that there can be no diversity and the complaint should be dismissed.

**B.** **EVEN IF JURISDICTION IS FOUND COUNT II AND III OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THEY FAIL TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test sufficiency of the complaint, not to decide the merits of the case. Triad Associates Incorporated v. Chicago Housing Authority, 892 F.2d 583, 586 (7th Cir. 1989). The complaint must be dismissed for

failure to state a claim when "it appears to be any doubt that the plaintiff can prove any facts in support of its claim that would demonstrate an entitlement to relief. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). A complaint must contain sufficient facts to state a claim as a matter of law and mere conclusionary allegations are insufficient to survive a motion to dismiss. *Id*. Dismissal is granted only if is clear there is no set of facts that there plaintiff can prove which entitle plaintiff to relief. Connelly v. Gibson, 355 U.S. 41, 45-46, 78 SCT 99, 1957; Kunik v. Racine County Wisconsin, 1946 F.2d 1574, 1579 (7th Cir. 1991). In this case, Count I seeks to recover purely economic damages arising out of the alleged negligence of the defendant. This Count should be dismissed because under Illinois law, the *Moorman Doctrine* specifically precludes a plaintiff from recovering such damages. Moorman Mfg. Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443, 61 Ill.Dec. 746 (1982). In addition, Count II and Count III seek damages arising out of a contract to which the plaintiff does not have standing to sue under since it was not a party to the contract, an assignee or third party beneficiary. The plaintiff was also not in privity with the defendant which is required to recover for damages related to the breach of express and implied warranties.

I.    **The Plaintiff is barred from recovering damages arising out of tort under the Moorman Doctrine.**

Count I of plaintiff's complaint seeks to recover solely economic damages arising out of the negligence of the defendant. Illinois law holds that in the absence of personal injury, damages for purely economic loss are generally not recoverable in tort cases. Moorman Mfg. Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443 (1982). In this case, plaintiff's Count I should be dismissed as it seeks, in violation of the *Moorman Doctrine,* damages to its subrogor's premises as a result of the alleged negligence of defendant, contractor. (See Exhibit A at paragraphs 20-21).

In Moorman, the defendant sold the plaintiff a grain storage tank that was poorly made. The tank exploded some time after the plaintiff purchased it and he sued the defendant alleging he suffered economic damages due to the negligent design of the tank. 91 Ill. 2d at 82, 435 N.E.2d at 448. The Illinois Supreme Court created the bright line rule, known as the Moorman Doctrine, when it ruled that the plaintiff, as a disappointed consumer, could not recover damages in negligence for purely economic loss. Id. The court defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits — without any claim of personal injury or damage to other property. Id.; see also Trans States Airlines v. Pratt & Whitney Canada, Inc. 177 Ill. 2d 21, 42, 682 N.E.2d 45, 54, 224 Ill. Dec. 484, 493 (1997) (holding that the test for what is other property is what was bargained for. In Trans States, an airplane engine malfunctioned, and the court concluded that the damage to the airframe due to the engine failure is not "other" property damage because the subject of the bargain was for the entire aircraft, not just the engine). The Moorman holding is based upon the premise that contract law and the Uniform Commercial Code offer the appropriate remedies for economic losses sustained by disappointed commercial expectations when there is no injury either to any person or to other property. 91 Ill. 2d at 86, 435 N.E.2d at 450.

In Chicago Heights Venture v. Dynamite Nobel of America, 782 F.2d 723 (7th Cir. 1986), the Court upheld the dismissal of a negligence claim against a company that installed roofs on apartment buildings. In that case, plastic sheeting material tore away from the roof of the buildings. The sheeting later entirely separated from the roof and fell to the ground during a windstorm. As a result of these incidents, water leaked into the buildings, damaging ceilings and walls. The ripping force of the separating sheeting loosened the bricks of the buildings. The Seventh Circuit applied Moorman and determined that the losses involved were purely economic

in nature even though the complaint alleged loss to other property as well.

In the instant case, plaintiffs allege faulty or deficient work product, without any claim of personal injury or damage to other property. Therefore, plaintiff's claim for damages arising out of the alleged negligence of the defendant is barred by the *Moorman Doctrine.* Therefore, plaintiff's complaint should be dismissed.

## II.    The Complaint Fails to State a Claim for Breach of Express Warranty.

The Plaintiff alleges in Count II of its complaint that Jansma breached an expressed warranty with its insured. The count is defective for several reasons and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). When a federal court sits in diversity jurisdiction, state court precedent on issues of state law are binding. RAR Incorporated v. Turner Diesel Ltd., 107 F.3d 1272, 1276 (7th Cit. 1997). It is unclear whether plaintiff is pursuing a claim for breach of express written warranty or breach of another express but unwritten warranty. The plaintiff's complaint simply alleges that defendant "expressly warranted that its work would be performed in a reasonable and workmanlike manner." (See Exhibit A at paragraph 24). The claim should be dismissed in either case, however, because plaintiff fails to state a claim under either theory. First, Illinois case law holds that ". . . in general, because an express warranty is an action in contract, a party must be in  privity to the contract before bringing any breach of express warranty claim." Canadian Pac. Company v. Williams-Hayword Protective Coatings, No. 02 C 8800, 205 WL 782698 at 15 (N.D. Ill. April 6, 2005). In this case, plaintiff seeks to hold Jansma liable for breach of an alleged express warranty related to an agreement between its insured and Jansma, even though plaintiff was not a party to agreement. Consequently, in the absence of such privity, plaintiff's claim for breach of express warranty should be dismissed.

### III.    The Complaint Fails to State a Claim for Breach of Implied Warranty.

Under Illinois law, privity of contract is required to support a claim for breach of implied warranty. Stewart Warner Corp. v. Burns Intern. Sec. Services, Inc., 343 F.Supp 953 (N.D. 1972); *see also* Suvada v. White Motor Co., 210 N.E.2d 182, 184 (Ill. 1965)(holding that privity of contract is required to maintain actions on warranties). Privity of contract is a relationship that exists between two contracting parties. Here, the undisputed facts as set forth in the plaintiff's complaint show that the plaintiff, as subrogee of Aunt Martha's, never had a contractual relationship whatsoever with defendant. In the absence of such privity between plaintiff and defendant, there can be no breach of implied warranty. Therefore, plaintiff's Count II and allegation alleging breach of implied warranty should be dismissed as well.

In Stewart Warner Corp. v. Burns Int'l Security Serves, Inc., a plaintiff lessee of a building, damaged by fire sued a defendant whose employees allegedly caused the fire. Id. at 953. The plaintiff sued for breach of implied warranty under a theory that the defendant breach an implied warranty with the lessor of the building. Id. The Court found that the plaintiff was not a party to the contract and therefore could not maintain an action for breach of implied warranty against the defendant. Id. In the case at bar, there is no contractual relationship between the plaintiff and the defendant. Therefore, the Plaintiff is barred from recovering damages arising out of the alleged breach of implied warranty.

In Bob Evans Farms, Inc. v. Excellent Builders, Inc., 1988 WL 80137 (N.D. Ill. 1988), the plaintiff sued a building subcontractor for damages arising out of a renovation of a restaurant. The plaintiff, as in our case, sought damages for breach of implied warranty, against a third party with whom it never contracted, to perform services. Id While the Court found that a building contractor could be sued for breach of implied warranty in connection with services performed

on a building, privity of contract must exist between the parties. Id. In the absence of such

privity, the plaintiff could not maintain an action for breach of implied warranty. Id.

In Board of Education v. A, C and S Incorporated, 131 Ill.2d 428, 456 N.E.2d 580

(1989), involved a claim for property damage based on a breach of implied warranty. The Court

held that the plaintiff must allege privity of contract in the allegations of its complaint to state a

valid cause of action for breach of implied warranty. Id. It is evident that the named plaintiff in

the case at bar was not in privity with the defendant. Consequently, plaintiff's Count II alleging

breach of implied warranty fails and should be dismissed by this court.

### III.    Plaintiff's Count III Alleging Breach of Contract Fails to State a Claim Upon which Relief Should be Granted and Should also be Dismissed.

Plaintiff alleges in Count III of its complaint that Jansma breached a contract with its

subrogee, Aunt Martha's. This Count is defective and should be dismissed because it fails to

state a claim upon which relief can be granted. Under Illinois law, plaintiff is required to plead

and prove the following as central elements for a breach of contract claim:

1.    Existence of a valid enforceable contract, including allegations of offer

acceptance, and consideration;

2.    Performance by plaintiff of all contractual conditions required of him;

3.    Breach of contract by the defendant;

4.    A resulting injury to the plaintiff.

Gallagher Corporation v. Russ, 309 Ill.App.3rd 192, 199; 721 N.E.2d 605 (1st Dist. 1999).

"Generally, only a party to a contract, or one in privity with a party, may enforce a contract,

except that a third party beneficiary or assignee may sue for a breach of a contract made for his

benefit." Wilde v. 1st Savings & Loan Ass'n of Wilmette, 134 Ill.App.3d 3d 722, 480 N.E.2d

1236 (1st Dist. 1985); Bescor, Inc. v. Chgo. Title & Trust Co., 113 Ill.App.3d 65, 446 N.E.2d

1209, 1213 (2<u>nd</u> <u>Dist. 1983</u>). "The term privity denotes mutual or successive relationship to the same rights of property." <u>Keith v. Thayer, 181 Ill.App. 370, 372 (1913)</u>.

While a contract can be enforced by a party, an assignee, and a third party beneficiary to a contract, the plaintiff, an insurance company, is not in any of these positions. <u>E.B. Harper & Co., Inc. v. Nortek, Inc.</u>, 104 F.3d 913 (7<u>th</u> Cir. 1997); <u>David v. J. Elrod Relators on Devon, Inc.</u>, 75 Ill.App.3d 449, 394 N.E.2d 583 (1<u>st</u> Dist. 1979); <u>Sabath v. Mansfield,</u> 60 Ill.App.3d 1008, 377 N.E.2d 161 (1<u>st</u> Dist. 1978); <u>Carson Pirie Scott & Co. v. Parrett</u>, 346 Ill.252, 178 N.E.2d 498 (1<u>st</u> Dist. 1931). The plaintiff has no standing to sue for breach of contract and is not in privity with the defendant. Plaintiff has no contract rights against Jansma, though it may be the subrogee of Aunt Martha's. While the plaintiff contends that it is entitled to seek damages for breach of contract as the subrogee of Aunt Martha's, this argument fails because the plaintiff has no standing to seek damages under the contract as the subrogee of its insured.

In <u>Illinois Housing Development Authority v. M-Z Const. Corp.</u>, 110 Ill.App.3d 129, 441 N.E.2d 1179 (1<u>st</u> Dist. 1982), the Court considered whether an alleged subrogee was entitled to seek damages for a breach of contract when it was not in privity with the defendant. <u>Id.</u> In <u>Illinois Housing</u>, Illinois Housing Development Authority, owner, sued an architectural firm and architect for breach of contract, even though they were not in privity with the defendant. <u>Id.</u> In reviewing the allegations in the plaintiff's complaint, the Court found that the plaintiff failed to allege facts sufficient to demonstrate how it had standing to sue for breach of contract and dismissed the plaintiff's cause of action for breach of contract. <u>Id.</u> at 142. Similarly, in the case at bar, the plaintiff has failed to allege facts sufficient to demonstrate either that it was a party to the contract, an assignee, or a third party beneficiary. Therefore, Count III of plaintiff's

complaint erroneously attempts to allege a cause of action for breach of contract and said Count should be dismissed by this court.

## CONCLUSION

Based on forgoing, defendant Jansma Construction Company respectfully request this court dismiss with prejudice plaintiff's cause of action.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

s/ Harlene G. Matyas

By: _____

One of the attorneys for Defendant

Harlene G. Matyas – ARDC# 1796879
Brian M. Morris – ARDC# 6252424
TRIBLER ORPETT & MEYER, P.C.
225 West Washington Street, Suite 1300
Chicago, Illinois 60606
(312) 201-6400
(312) 201-6401 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Defendant's Memorandum in Support of its Motion to Dismiss was served upon:

Jeffrey Charles Calabrese
Cozen O'Conner
222 S. Riverside Plaza, Suite 1500
Chicago, IL 60606
jcalabrese@cozen.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 1300, Chicago, IL 60606, prior to 5:00 p.m. on the _3rd_ day of July, 2008, with proper postage prepaid.

s/ Harlene G. Matyas

_____
an Attorney

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST NATIONAL INSURANCE      )
COMPANY OF AMERICA as subrogee of )
AUNT MARTHA'S YOUTH SERVICE    )
CENTER,                        )
                               )
            Plaintiff,         )
                               )
    v.                         )
                               )
JANSMA CONSTRUCTION COMPANY,   )
                               )
                               )
            Defendant.         )

FILED: MAY 08, 2008
08CV2655  LCW
JUDGE HOLDERMAN
MAGISTRATE JUDGE NOLAN

CIVIL ACTION NO.:

JURY DEMANDED

## COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, FIRST NATIONAL INSURANCE COMPANY OF AMERICA

as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, by its undersigned attorneys,

and for its complaint against Defendant, JANSMA CONSTRUCTION COMPANY, and alleges

as follows:

## PARTIES

1.    At all times material to this action, Plaintiff, FIRST NATIONAL INSURANCE

COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER

(hereinafter "First National"), was and remains a corporation duly organized and existing under

the laws of the State of Washington, with its principal place of business located at Seattle,

Washington, which was in the insurance business, and was duly licensed to issue policies of

insurance in the State of Illinois.

2.     Plaintiff's subrogor, AUNT MARTHA'S YOUTH SERVICE CENTER (hereinafter, "Aunt Martha's"), was an ongoing business concern that owned and was renovating prior to occupancy the facility located at 5 Centre Street, Park Forest, Illinois 60466 (hereinafter, "Subject Premises").

3.     Prior to May 9, 2003, First National issued its policy of insurance No. CP0777044 to Aunt Martha's, which insurance policy provided property, among other, coverage to Aunt Martha's. At all times material to this action, said policy was in full force and effect.

4.     At all times material to this action, Defendant, JANSMA CONSTRUCTION COMPANY (hereinafter "Jansma"), was an Illinois company, with its principal place of business in Crete, Illinois, and was engaged, *inter alia*, in the business of construction and/or general contracting, among other things.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332, as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims at issue occurred within this District and defendants are subject to personal jurisdiction within this District.

## COMMON ALLEGATIONS

7.     The Subject Premises, an approximately 33,000 square-foot, wood-frame structure with a full basement was built in 1945.

8.    The Subject Premises was donated to Aunt Martha's by Roger's Enterprises d/b/a Rogers & Holland Jewelers in February 2003.

9.    Upon information and belief, Rogers Enterprises last occupied the Subject Premises in March 2000.

10.    Upon assuming ownership, Aunt Martha's formed agreements with various contractors to renovate the Subject Premises (hereinafter, "Renovation Project") including an agreement with Jansma which was to perform, general contracting, demolition, debris removal, clean up and carpentry, among other work (hereinafter, "Agreement").

11.    On May 9, 2003, during the course of the Renovation Project, the Subject Premises sustained a severe flooding loss when an electrical failure precluded a pump from removing water from the Subject Premises promoting mold growth within the Subject Premises (hereinafter, "Occurrence").

12.    On or after May 9, 2003, Jansma and the insured modified the Agreement, or formed a separate agreement, pursuant to which Jansma, for a set cost, was to remove mold-laden materials discovered during, among other occasions, Jansma's work to demolish and relocated basement walls within the Subject Premises (hereinafter, "Mold Agreement").

13.    On or after May 9, 2003, Jansma continued its demolition work on the Renovation Project pursuant to the Agreement and the Mold Agreement during which it continued to see mold and/or other fungal growth on the materials it was removing from the basement.

14.    Despite such observations on or after May 9, 2003, Jansma continued to remove the mold-laden materials without taking proper precautionary measures to preclude the spread of mold to other parts of the Subject Premises, and without taking proper remedial measures to stem

3

and/or eliminate existing mold growth on building materials that were to be re-used during the Renovation Project.

15.    On and after May 9, 2003, the Subject Premises sustained severe mold and other damage directly resulting from Jansma's conduct in paragraph 14.

16.    Aunt Martha's fulfilled all obligations and conditions of the Agreement and the Mold Agreement with Jansma.

17.    As a direct result of the aforementioned events, Aunt Martha's suffered property damage in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

18.    Pursuant to the terms and conditions of its policy of insurance with Aunt Martha's, First National made payment to Aunt Martha's for the aforementioned damages, pursuant to which First National became subrogated to the rights of Aunt Martha's.

## COUNT I
### NEGLIGENCE

19.    First National realleges Paragraphs 1-18 above, as and for this Paragraph 19 as though fully set forth herein.

20.    At all times material to this action, Jansma and its employees, representatives, agents and/or subcontractors, were under a duty to exercise reasonable care and caution consistent with other general contractors and construction contractors in good standing in the trade when performing the work alleged in Paragraphs 10 through 14, above.

21.    Notwithstanding said duties, Jansma and/or its employees, representatives, agents and/or subcontractors, breached its duties in one or more of the following ways:

        a.    Failed to remove mold-laden materials from the
              Subject Premises in containers that precluded mold
              spread within the Subject Premises;

b.    Failed to adequately dry, clean and treat wall cavities within the Subject Premises to eliminate mold and preclude future mold growth prior to re-closing the same;

c.    Failed to inspect wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

d.    Failed to test wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

e.    Failed to perform its Renovation Project work in a professional and workmanlike manner;

f.    Failed to comply with applicable codes, regulations, guidelines, policies, procedures, specifications, industry customs and/or practices during the Renovation Project;

g.    Failed to hire, supervise, train, and/or control its agents, representatives, employees and subcontractors in performing mold remediation work pursuant to the Agreement and/or Mold Agreement;

h.    Failed to consult with industrial hygienists or other health professionals, once mold was observed within the Subject Premises, to determine whether and under what condition it could continue the Renovation Project;

i.    Failed to identify and eliminate the source of water intrusion within the Subject Premises to eliminate further mold growth during the Renovation Project;

j.    Failed to develop a plan to remediate the mold within the Subject Premises, once mold was observed and once it had formed the Mold Agreement, and prior to continuing the Renovation Project;

k.    Failed to discard moldy items within the subject Premises that could not be properly dried, cleaned and treated;

l.    Failed to erect mold containments within the Subject Premises to preclude mold spread within the Subject Premises;

m.    Failed to employ a proper ventilation configuration within the Subject Premises to preclude mold spread within the Subject Premises;

n.    Installed new drywall over mold-laden, untreated and/or inadequately dried and cleaned building materials within the Subject Premises; and

o.    Was otherwise careless and negligent in performing its work.

22.    As a direct and proximate result of one or more of the aforesaid acts or omissions by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT II
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

23.    First National realleges Paragraphs 1-22 above, as and for this Paragraph 23 as though fully set forth herein.

24.    At all times material to this action, upon information and belief, Jansma, expressly warranted that its work would be performed in a reasonable and workmanlike manner,

25.    At all times material to this action, all work performed by Jansma, by and through its agents, employees, representatives and/or subcontractors, included an implied warranty that the work would be performed in a reasonable, workmanlike manner and in accordance with industry standards, and that all reasonable and customary precautions to protect the Premises against damage would be taken.

26.    Notwithstanding the aforesaid express and implied warranties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its express and/or implied warranties by performing one or more of acts and/or omissions set forth in Paragraph 21 above.

27.    Aunt Martha's provide timely and adequate notice of such breaches of warranty to Jansma.

28.    As a direct and proximate result of one or more of the aforesaid breaches of warranty by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT III
### BREACH OF CONTRACT

29.    First National realleges Paragraphs 1-28 above, as and for this Paragraph 29 as though fully set forth herein.

30.     At all times material to this action, pursuant to the Agreement and/or the Mold Agreement, Jansma was obligated to perform its work in a workmanlike manner and according to applicable codes and industry standards.

31.     Notwithstanding its contractual duties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its contractual duties by performing one or more of acts and/or omissions set forth in Paragraph 21 above and thereby failed to perform its work in a workmanlike manner and violated various codes and industry standards.

32.     As a direct and proximate result of one or more of the contractual breaches by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

FIRST NATIONAL INSURANCE COMPANY OF
AMERICA as subrogee of AUNT MARTHA'S YOUTH
SERVICE CENTER,

By:     /s/ Jeffrey C. Calabrese
        One of Its Attorneys

Jeffrey C. Calabrese
COZEN O'CONNOR
222 South Riverside Plaza, Suite 1500
Chicago, IL 60606
Tel: (312) 382-3100
Fax: (312) 382-8910

CHICAGO\61379\1\ 142886.000