**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST NATIONAL INSURANCE | ) | |
| COMPANY OF AMERICA as subrogee of | ) | |
| AUNT MARTHA'S YOUTH SERVICE | ) | |
| CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 08-CV-2655 |
| | ) | |
| JANSMA CONSTRUCTION COMPANY, | ) | Chief Judge James F. Holderman |
| | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**</u>

**NOW COMES** Plaintiff, FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, by its undersigned attorneys, and for its Memorandum In Opposition To Defendant's Motion To Dismiss Plaintiff's Complaint, states as follows:

**I.    INTRODUCTION**

This case arises from property damage resulting from the defendant's alleged improper mold remediation efforts within the plaintiff's insured premises at 5 Centre Street, Park Forest, Illinois 60466 ("Subject Premises"), as well as its alleged failure to act with reasonable care while performing such work. Specifically, the defendant removed moldy building materials from the Subject Premises without adequate supplies and facilities to control the spread of mold spores, and to protect other parts of the Subject Premises against such spread, under circumstances when the propagation of these spores was reasonably foreseeable.

Plaintiff filed its Complaint, Exhibit A, on May 9, 2008, alleging causes of action for negligence, breach of express and/or implied warranties, and breach of contract. The defendant filed its Motion to Dismiss, Exhibit B (Defendant's Motion), and its supporting memorandum, Exhibit C ("Defendant's Memorandum"), on July 3, 2008.

Citing Federal Rule of Civil Procedure ('Rule") 17(a), among other things, the defendant asserted that the Complaint should be dismissed because the plaintiff had failed to allege facts showing that the plaintiff was the real party in interest. See Exhibit B at 2 and Exhibit C at 3. Moreover, the defendant argued that plaintiff failed to state a claim upon which relief can be granted and moves to dismiss the Complaint pursuant to Rule 12(b)(6). Specifically, the defendant averred that Count I (Negligence) should be dismissed because Illinois' *Moorman Doctrine* precluded recovery in tort for purely economic damages. See, Exhibit B at 2 and Exhibit C at 5, 7. The defendant further argued that Count II (Breach of Express and/or implied Warranties) and Count III (Breach of Contract) should be dismissed because the plaintiff was not in privity of contract with the defendant. See, Exhibit B at 3 and Exhibit C at 7, 9 10.

As the follow makes abundantly clear, the plaintiff has plead sufficient facts to properly demonstrate that it is a real party in interest pursuant to Rule 17(a). Plaintiff has also plead sufficient facts to properly allege its negligence, breach of express and implied warranties and breach of contract claims.

## I.    LEGAL STANDARD

The standard regarding diversity jurisdiction was adequately set forth in first paragraph, and the first sentence of the second paragraph, of Section A of the Defendant's Memorandum and will not be repeated here. See, Exhibit C at 3.

Rule 17 provides that an "action must be prosecuted in the name of the real party in interest…." Fed.R.Civ.P. 17(a)(1) (Thomson/West 2007). It further provides that the "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action…." Fed.R.Civ.P. 17(a)(3) (Thomson/West 2007).

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted is governed by Federal Rule of Civil Procedure (hereinafter, "Rule") 12(b)(6), which provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion… (6) failure to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6) (Thomson/West 2007).

As noted in Defendant's Memorandum at page 4, the purpose of such motion is to test the sufficiency of the complaint, not to decide the merits of the case. *See, Triad Associates Inc., v. Chicago Housing Authority*, 892 F.2d 586 (7th Cir. 1989). The court construes the pleading liberally in the pleader's favor, it presumes all well-pleaded allegations as true, it resolves all doubts and inferences in the pleader's favor, and it views the pleading in the light most favorable to the non-moving party. *See*, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,1965 (2007) (expressly overruling the *Conley v. Gibson* (355 U.S. 41 (1957) standard cited by the defendant in Defendant's Memorandum at page 5). The pleading must contain sufficient allegations to give defendants fair notice of both the complaint's claims and the grounds for those claims. *See, Dura Farms, Inc., v. Broudo*, 544 U.S. 336, 346-347 (2005).

## III.    ARGUMENT

### A.    <u>Plaintiff has plead sufficient facts to properly allege that it is a real party in interest and that the Court's subject matter jurisdiction is proper</u>

Plaintiff's Complaint clearly alleged that the Subject Premises was covered by the plaintiff's property insurance policy at the time of the loss and that the Subject Premises sustained damage that was covered by this policy. See Exhibit A, paragraphs 3, 14 and 15. Plaintiff also plainly alleged that "[p]ursuant to the terms and conditions of its policy of insurance with Aunt Martha's, First National made payment to Aunt Martha's for the aforementioned damages, pursuant to which First National became subrogated to the rights of Aunt Martha's." See Exhibit A, paragraphs 17 and 18. These allegation clearly satisfy Illinois' subrogation statute which provides:

> Any action hereafter brought by virtue of the subrogation provision of any contract or by virtue of subrogation by operation of law shall be brought either in the name or for the use of the subrogee; and the subrogee shall in his or her pleading on oath, or by his or her affidavit if pleading is not required, allege that he or she is the actual bona fide subrogee and set forth how and when he or she became subrogee.

735 ILCS 5/2-403(c) (Thomson/West 2007).

The defendant argues that, despite this unequivocal language, which shall be presume to be true and liberally construed in plaintiff's favor, these allegations are insufficient because they fail to allege a "complete subrogation" and thereby fails to show that the plaintiff was a real party in interest. See Exhibit B at 2 and Exhibit C at 3. The defendant is wrong in both regards.

The plaintiff need not allege that there was a complete subrogation and the defendant misconstrues case law addressing that concept. The defendant advances the proposition that  a subrogating insurer will be found to be the real party interest when there has been a complete subrogation of the insured's rights to him. See Exhibit C at 3. From this, the defendant argues

4

that absent such allegations in plaintiff's Complaint, plaintiff failed to plead that it was a real party in interest.

However, the *Aetna* case cited by the defendant demonstrates the fallacy of this argument. In holding that the plaintiffs, subrogating insurers, could properly bring Federal Tort Claims Act claims in their own name, the court reasoned that an insurer-subrogee, who has substantive equitable rights, qualifies as a real party in interest. *See*, *United States v. Aetna Casualty & Surety Co*., 338 U.S. 366 , 380 (1949).  Specifically, if the subrogee has paid  an entire loss suffered by the insured, "it is the only real party in interest and must sue in its own name." Id. at 380-381. The defendant latched on to this text and ignored Aetna's next sentence: "if it [the subrogee] has paid only part of the loss, both the insured and insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest." Id. See also, *Federal Ins. Co. v. ADT Security Systems, Inc*., 222 F.R.D. 578, 580 (N.D. IL. 2004); *Carpetland, U.S.A. v. J.L. Adler Roofing, Inc*., 107 F.R.D. 357, 358 (N.D. IL. 1985), *Baltz v. The City of Rock Falls*, 434 N.E.2d 807, 808 (3 Dist., 1982).

Thus, the plain language of *Aetna, ADT Security Systems, Carpetland* U.S.A., and Baltz clearly demonstrates that the plaintiff here is a real party in interest. Moreover, the allegations in plaintiff's Complaint in paragraphs 3, 14, 15, 17 and 18, show the derivation of plaintiff's subrogation rights and interests as a real party in interest. The defendant has cited no case law requiring joinder on plaintiff's subrogor pursuant to its authorities above which consistently hold that in the context of partial subrogation, both the insured and the subrogating insurer may, but are not required to file actions. *See id*. Indeed, the defendant has not attempted to assert via a

Rule 19 motion that plaintiff's subrogor should be joined if feasible or that it is an indispensable party.

Thus, there can be little doubt that plaintiff has plead sufficient facts to properly allege that it is a real party in interest and that the Court's diversity jurisdiction is proper. Should the Court find that plaintiff's allegations in these regards are lacking, plaintiff hereby moves the Court for leave to amend its Complaint to address such shortcomings.

### B.    Plaintiff has plead sufficient facts to properly allege its negligence claim

In Paragraphs 1 through 22 of Plaintiff's Complaint clearly alleged facts sufficient to state a negligence claim. The defendant does not attack plaintiff's pleading as to plaintiff's allegations of the elements of a tort claim. Instead, the defendant asserts that Illinois' *Moorman Doctrine* precludes such claim in plaintiff's Count I since the damages here are solely economic loss. *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982). The defendant is correct in its citation of *Moorman's* general rule, but fails to address a key exception.

*Moorman* defined economic loss as damages damage for inadequate value, cost of repair and replacement of defective product, or consequent loss of profits—without any claim of personal injury or damage to other property. *See id*. at 448. Here, plaintiff has alleged damage to other property. Moreover, it has alleged damage that resulted in a public safety hazard, pursuant to which the court in *Board of Education v. A, C & S, Inc*., permitted the plaintiffs to proceed with tort claims. *Board of Education v. A, C & S, Inc*., 546 N.E.2d 580 (Ill. 1989).

*Board of Education v. A, C & S, Inc*., involved three consolidated complaints filed in the Circuit Court of Cook County by various educational institutions. *Id*. at 585. The defendants contended that the plaintiffs had only suffered economic loss, which is recoverable in contract and not in tort pursuant to *Moorman*. *Id*. They argued that there was no property damage is

6

alleged in the complaint. *Id*. The plaintiffs countered that there was alleged property damage to the extent that the buildings are contaminated with a toxic substance which renders them unsafe for their normal use. *Id*.  Both sides agreed that the principles established in *Moorman* and its progeny govern these counts. *Id*.  The Court addressed them together in determining whether the complaints sufficiently allege a tort claim to survive the defendants' motion to dismiss. *Id. See also*, *Moorman Mfg. Co. v. National Tank Co*., 91 Ill. 2d at 88 ("The policy considerations against allowing recovery for solely economic loss in strict liability cases apply to negligence actions as well").

In *Board of Education*, the trial court held, among other things, that the complaints failed to allege sufficient facts to withstand the defendants' motion to dismiss. The appellate court reversed and the Illinois Supreme Court affirmed. "We agree with the appellate court that these complaints allege sufficient facts to survive a motion to dismiss as to the negligence, strict liability and negligent misrepresentation counts…." *Board of Education v. A, C & S, Inc*., 546 N.E.2d at 583.

The Court quoting *Moorman* reasoned that "the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved, *i.e.*, when a product is unfit for its intended use." *See Moorman Mfg. Co. v. National Tank Co*., 91 Ill. 2d at 81-82. (internal citations omitted).

Noting that the plaintiff had alleged pervasive mold infestation within numerous public school building, among other things, the Court held that the plaintiff's complaints had alleged sufficient facts to establish a tort action under the principles established in *Moorman. Board of Education v. A, C & S, Inc.*, 546 N.E.2d at 588. The Court reasoned that the nature of the defect in these ACMs [asbestos-containing materials] is the asbestos fibers, which are toxic and which, it has been determined, may, in certain circumstances, be harmful. *Id*. The Court concluded that "it would be incongruous to argue there is no damage to other property when a harmful element exists throughout a building or an area of a building which by law must be corrected and at trial may be proven to exist at unacceptably dangerous levels." Board of Education v. A, C & S, Inc., 546 N.E.2d 590, 588 (Ill. 1989).

Like the plaintiffs in Board of Education, plaintiff here has alleged that a known toxic material, mold, that has been identified as such along with its dangerous propensities by Illinois statute (see 410 ILCS 105/1 et seq., Mold Remediation Registration Act) was spread throughout the Subject Premises via the defendant's careless conduct. *See*, Exhibit A, Paragraphs 19-22. These allegations and reasonable inference drawn therefrom demonstrate that as a direct result of such conduct, the plaintiff's subrogor has been exposed, through hazardous mold spread by the defendant, to an unreasonable risk of injury to its person (i.e., guests of this public youth service center) and its property.

Therefore, there is little doubt that plaintiff has alleged facts sufficient to properly allege its negligence claim and that the public safety exception to the Moorman doctrine should apply. Should the Court find that plaintiff's allegations in these regards are lacking, plaintiff hereby moves the Court for leave to amend its Complaint to address such shortcomings.

8

C.  **Plaintiff has plead sufficient facts to properly allege its Breach of Express and Implied Warranty, as well as Breach of Contract Claims**

The defendant asserted that the allegations of Counts II and III are insufficient to state a claim upon which relief could be granted because there were no allegations that the plaintiff was in privity of contract with the defendant. The defendant cites no further defect in plaintiff's allegations as to these counts. An examination of the bases for the doctrine of subrogation plainly show that the defendant is wrong.

The doctrine of subrogation is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid. *Dix Mut. Ins. Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (Ill. 1992) (internal citation omitted)**.** Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. *Id*. One who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce. *Id*. (internal citation omitted).

These authorities make clear, and it is fundamental that, subrogation rights can arise contractually or equitably by operation of law and that, as in this case, a subrogating insurer's rights are derivative of those possessed by its insured. *A fortiori*, to possess such right implies that a subrogating insurer must have assumed the bases for such rights. In other words, if plaintiff's insured had a cause of action for breach of express and implied warranties, and a cause of action for breach of contract, then so did the plaintiff.

Here, the plaintiff has plead, and the defendant has not challenged, that a contract or agreement for removal of moldy building materials existed between plaintiff's subrogor and the defendant, and that plaintiff fulfilled all of its obligations and condition pursuant to the agreement. *See*, Exhibit A, Paragraphs 16, 29-32. As noted above, the plaintiff has also

9

sufficiently plead the derivation of its equitable subrogation rights via payments to its insured pursuant to an insurance policy. *See*, Exhibit A, Paragraphs 3, 14, 15, 17 and 18. Therefore, plaintiff has alleged sufficient facts to demonstrate that it was and/or should be deemed to have been in privity of contract with the defendant, pursuant to the rights derived from its insured and the bases for those rights.

To rule in defendant's favor on this issue would be to negate the entire concept of subrogation and would effectively promote injustice and unjust enrichment. In essence, the subrogating insurer would be stepping into under-sized shoes, since the absence of privity with a defendant would preclude all contract and warranty claims, among others. Thousands of subrogation cases filed and litigated each year with breach of contract and warranty claims further demonstrates that the defendant's position is untenable.

Moreover, none of the cases cited by the defendant involved a subrogation action from which the defendant could possible cite applicable authority. Thus the oft repeated, general proposition advanced by the defendant requiring a plaintiff to allege privity of contract with the defendant is a general rule only. The defendant simply failed address the derivative nature of subrogation rights and the equitable principals upon which the doctrine was founded, which function in tandem as an exception to the general privity rule. Thus, the defendant has neither cited, nor can it cite, any authority requiring the subrogating insurer plaintiff to alleged that it was directly in privity of contract with the defendant.

It is clear that the plaintiff has alleged sufficient facts to establish its derivative rights and the bases thereof and to properly plead its breach of express and implied, and breach of contract claims. Should the Court find that plaintiff's allegations in these regards are lacking, plaintiff hereby moves the Court for leave to amend its Complaint to address such shortcomings.

10

**IV.     CONCLUSION**

For the reasons set forth above, the Defendants' Motion To Dismiss Plaintiff's Complaint should be denied.

**WHEREFORE**, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court deny the Defendants' Motion To Dismiss Plaintiff's Complaint, and for such other and further relief as this Court deem just and proper.

FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER,

By:/s/ Jeffrey C. Calabrese
    One of Its Attorneys

Jeffrey C. Calabrese
COZEN O'CONNOR
222 South Riverside Plaza, Suite 1500
Chicago, IL  60606
Tel: (312) 382-3100
Fax: (312) 382-8910

**CERTIFICATE OF SERVICE**

I hereby certify that  on the 11th day of August, 2008, I electronically filed the Plaintiff's MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT using the CM/ECF System which will send notification of such filings to all attorneys of record.

By: /s/ Jeffrey C. Calabrese
    Jeffrey C. Calabrese
    Attorney for Plaintiff

CHICAGO\646206\1  142886.000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FIRST NATIONAL INSURANCE )
COMPANY OF AMERICA as subrogee of )
AUNT MARTHA'S YOUTH SERVICE )
CENTER, )
                                 )
            Plaintiff, )
                                 )
   v. )
                                 )
JANSMA CONSTRUCTION COMPANY, )
                                 )
            Defendant. )

FILED: MAY 08, 2008
08CV2655    LCW
JUDGE HOLDERMAN
MAGISTRATE JUDGE NOLAN

CIVIL ACTION NO.:

**JURY DEMANDED**

## COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, by its undersigned attorneys, and for its complaint against Defendant, JANSMA CONSTRUCTION COMPANY, and alleges as follows:

## PARTIES

1.    At all times material to this action, Plaintiff, FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER (hereinafter "First National"), was and remains a corporation duly organized and existing under the laws of the State of Washington, with its principal place of business located at Seattle, Washington, which was in the insurance business, and was duly licensed to issue policies of insurance in the State of Illinois.



2.     Plaintiff's subrogor, AUNT MARTHA'S YOUTH SERVICE CENTER (hereinafter, "Aunt Martha's"), was an ongoing business concern that owned and was renovating prior to occupancy the facility located at 5 Centre Street, Park Forest, Illinois 60466 (hereinafter, "Subject Premises").

3.     Prior to May 9, 2003, First National issued its policy of insurance No. CP0777044 to Aunt Martha's, which insurance policy provided property, among other, coverage to Aunt Martha's.  At all times material to this action, said policy was in full force and effect.

4.     At all times material to this action, Defendant, JANSMA CONSTRUCTION COMPANY (hereinafter "Jansma"), was an Illinois company, with its principal place of business in Crete, Illinois, and was engaged, *inter alia*, in the business of construction and/or general contracting, among other things.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332, as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims at issue occurred within this District and defendants are subject to personal jurisdiction within this District.

## COMMON ALLEGATIONS

7.     The Subject Premises, an approximately 33,000 square-foot, wood-frame structure with a full basement was built in 1945.

2

8.    The Subject Premises was donated to Aunt Martha's by Roger's Enterprises d/b/a Rogers & Holland Jewelers in February 2003.

9.    Upon information and belief, Rogers Enterprises last occupied the Subject Premises in March 2000.

10.    Upon assuming ownership, Aunt Martha's formed agreements with various contractors to renovate the Subject Premises (hereinafter, "Renovation Project") including an agreement with Jansma which was to perform, general contracting, demolition, debris removal, clean up and carpentry, among other work (hereinafter, "Agreement").

11.    On May 9, 2003, during the course of the Renovation Project, the Subject Premises sustained a severe flooding loss when an electrical failure precluded a pump from removing water from the Subject Premises promoting mold growth within the Subject Premises (hereinafter, "Occurrence").

12.    On or after May 9, 2003, Jansma and the insured modified the Agreement, or formed a separate agreement, pursuant to which Jansma, for a set cost, was to remove mold-laden materials discovered during, among other occasions, Jansma's work to demolish and relocated basement walls within the Subject Premises (hereinafter, "Mold Agreement").

13.    On or after May 9, 2003, Jansma continued its demolition work on the Renovation Project pursuant to the Agreement and the Mold Agreement during which it continued to see mold and/or other fungal growth on the materials it was removing from the basement.

14.    Despite such observations on or after May 9, 2003, Jansma continued to remove the mold-laden materials without taking proper precautionary measures to preclude the spread of mold to other parts of the Subject Premises, and without taking proper remedial measures to stem

3

and/or eliminate existing mold growth on building materials that were to be re-used during the Renovation Project.

15.    On and after May 9, 2003, the Subject Premises sustained severe mold and other damage directly resulting from Jansma's conduct in paragraph 14.

16.    Aunt Martha's fulfilled all obligations and conditions of the Agreement and the Mold Agreement with Jansma.

17.    As a direct result of the aforementioned events, Aunt Martha's suffered property damage in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

18.    Pursuant to the terms and conditions of its policy of insurance with Aunt Martha's, First National made payment to Aunt Martha's for the aforementioned damages, pursuant to which First National became subrogated to the rights of Aunt Martha's.

## COUNT I
## NEGLIGENCE

19.    First National realleges Paragraphs 1-18 above, as and for this Paragraph 19 as though fully set forth herein.

20.    At all times material to this action, Jansma and its employees, representatives, agents and/or subcontractors, were under a duty to exercise reasonable care and caution consistent with other general contractors and construction contractors in good standing in the trade when performing the work alleged in Paragraphs 10 through 14, above.

21.    Notwithstanding said duties, Jansma and/or its employees, representatives, agents and/or subcontractors, breached its duties in one or more of the following ways:

  a.  Failed   to remove mold-laden materials from the
    Subject Premises in containers that precluded mold
    spread within the Subject Premises;

4

b.    Failed to adequately dry, clean and treat wall cavities within the Subject Premises to eliminate mold and preclude future mold growth prior to re-closing the same;

c.    Failed to inspect wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

d.    Failed to test wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

e.    Failed to perform its Renovation Project work in a professional and workmanlike manner;

f.    Failed to comply with applicable codes, regulations, guidelines, policies, procedures, specifications, industry customs and/or practices during the Renovation Project;

g.    Failed to hire, supervise, train, and/or control its agents, representatives, employees and subcontractors in performing mold remediation work pursuant to the Agreement and/or Mold Agreement;

h.    Failed to consult with industrial hygienists or other health professionals, once mold was observed within the Subject Premises, to determine whether and under what condition it could continue the Renovation Project;

i.    Failed to identify and eliminate the source of water intrusion within the Subject Premises to eliminate further mold growth during the Renovation Project;

j.    Failed to develop a plan to remediate the mold within the Subject Premises, once mold was observed and once it had formed the Mold Agreement, and prior to continuing the Renovation Project;

k.    Failed to discard moldy items within the subject Premises that could not be properly dried, cleaned and treated;

5

l.   Failed to erect mold containments within the Subject Premises to preclude mold spread within the Subject Premises;

m.   Failed to employ a proper ventilation configuration within the Subject Premises to preclude mold spread within the Subject Premises;

n.   Installed new drywall over mold-laden, untreated and/or inadequately dried and cleaned building materials within the Subject Premises; and

o.   Was otherwise careless and negligent in performing its work.

22.   As a direct and proximate result of one or more of the aforesaid acts or omissions by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT II
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

23.   First National realleges Paragraphs 1-22 above, as and for this Paragraph 23 as though fully set forth herein.

24.   At all times material to this action, upon information and belief, Jansma, expressly warranted that its work would be performed in a reasonable and workmanlike manner.

6

25.    At all times material to this action, all work performed by Jansma, by and through its agents, employees, representatives and/or subcontractors, included an implied warranty that the work would be performed in a reasonable, workmanlike manner and in accordance with industry standards, and that all reasonable and customary precautions to protect the Premises against damage would be taken.

26.    Notwithstanding the aforesaid express and implied warranties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its express and/or implied warranties by performing one or more of acts and/or omissions set forth in Paragraph 21 above.

27.    Aunt Martha's provide timely and adequate notice of such breaches of warranty to Jansma.

28.    As a direct and proximate result of one or more of the aforesaid breaches of warranty by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT III
## BREACH OF CONTRACT

29.    First National realleges Paragraphs 1-28 above, as and for this Paragraph 29 as though fully set forth herein.

7

30.    At all times material to this action, pursuant to the Agreement and/or the Mold
Agreement, Jansma was obligated to perform its work in a workmanlike manner and according
to applicable codes and industry standards.

31.    Notwithstanding its contractual duties, Jansma, by and through its agents,
employees, representatives and/or subcontractors, breached its contractual duties by performing
one or more of acts and/or omissions set forth in Paragraph 21 above and thereby failed to
perform its work in a workmanlike manner and violated various codes and industry standards.

32.    As a direct and proximate result of one or more of the contractual breaches by
Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid
Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF
AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray
that this Honorable Court enter judgment in their favor and against Defendant, JANSMA
CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than
$75,000.00, together with interest and the costs of this action, and for such other relief as may be
ordered by the Court.

FIRST NATIONAL INSURANCE COMPANY OF
AMERICA as subrogee of AUNT MARTHA'S YOUTH
SERVICE CENTER,

By:____/s/ Jeffrey C. Calabrese_____
One of Its Attorneys

Jeffrey C. Calabrese
COZEN O'CONNOR
222 South Riverside Plaza, Suite 1500
Chicago, IL  60606
Tel: (312) 382-3100
Fax: (312) 382-8910

CHICAGO\613791\1  142886.000

8

527.23123-34/12

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FIRST NATIONAL INSURANCE COMPANY OF )
AMERICA as subrogee of AUNT MARTHA'S )
YOUTH SERVICE CENTER, )
                                          )     Case No.  08-cv-002655
            Plaintiff, )
                                            )     Judge James F. Holderman
vs. )
                                            )     Magistrate Judge Nan R. Nolan
JANSMA CONSTRUCTION COMPANY, )
              )
            Defendant. )

## <u>DEFENDANT'S MOTION TO DISMISS</u>

COMES NOW Jansma Construction Company, by and through its attorneys, Tribler

Orpett & Meyer, P.C., and moves this court to dismiss plaintiff's complaint, pursuant to Fed. R.

17(a), 12(b)(1) and 12(b)(6). In support of its motion, defendant states as follows:

       1.      The plaintiff, First National Insurance Company of America ("First National"), a

Washington corporation, has filed a complaint as subrogee of Aunt Martha's Youth Service

Center ("Aunt Martha"), an Illinois corporation.  (A copy of plaintiff's complaint is attached

hereto as **Exhibit A**.)

       2.      Defendant, Jansma Construction Company ("Jansma") is an Illinois corporation.

       3.      On May 8, 2008, plaintiff filed a three count complaint against the defendant

alleging that Jansma is responsible for damages arising out of acts of negligence (Count I),

breach of express and/or implied warranties (Count II), and breach of contract (Count III).

       4.      Under FRCP 17(a) every action must be prosecuted by the real party in interest.

The general rule in federal court is that if an insurer has paid the entire claim of the insured, the

insurer is the real party in interest.  <u>Krueger v. Cartwright</u>, 996 F.2d 928, 931 (7th Cir. 1993).


EXHIBIT
B

Rule 17 requires state law to control in determining the real party in interest. <u>Frank v.</u>

<u>Hadesman and Frank, Inc.</u>, 83 F.3d 158, 159 (7th Cir. 1996). An insurer will be considered the

real party in interest if there has been a complete subrogation of the insured's rights to the

insurer. <u>Indiana Ins. Co. v. Vlaicevis</u>, 1992 WL 191125 *2 (N.D. 1992). Under Illinois law,

complaints must contain specific allegations as to how the actual rights or subrogation arose.

735 ILCS 5/2-403.

5.      In this case, plaintiff's complaint should be dismissed as it may not be the real

party in interest as it has failed to establish, on the face of its complaint, that it is entitled to stand

in the shoes of its insured based on complete subrogation of its insured's rights. The plaintiff's

complaint is void of any suggestion that it provided complete subrogation to its insured. The

plaintiff's complaint does not indicate whether the insured's claim was paid at all.

Consequently, the complaint should be dismissed, as First National is not the real party in

interest.

6.      In the alternative, plaintiff's complaint fails to state a basis on which relief should

be granted and should be dismissed by this court under FRCP 12(b)(6). The complaint may be

dismissed under this rule for two reasons (1) lack of cognizable legal theory or (2) insufficient

facts under a cognizable legal theory. <u>Stachowski v. Thomas Cicero</u>, 425 F3d 1075, 1078 (7th

Cir. 2005). In this case, plaintiff's complaint fails to state a claim for several reasons. First,

Plaintiff's Count I seeks recovery in tort for purely economic damages. Such damages are not

recoverable under the well established *Mormon Doctrine*. <u>Moorman Mfg. Co. v. National Tank</u>

<u>Co.</u>, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). Consequently, this Court should dismiss Plaintiff's

Count I alleging negligence as the Plaintiff is barred from recovery under the *Mormon Doctrine*.

7.      In Count II of its complaint, plaintiff seeks damages for breach of express and implied warranty.  This Count should also be dismissed, as the plaintiff was not in privity with defendant.  Illinois case law holds that ". . . in general, because an expressed warranty is a creature of contract, a party must have privity to the contract before bringing a breach of express warranty claim."  Canadian Pac. Ry Co. v. Williams-Hayword Protective Coatings, Case No. 02C8800, 2005 WL 782698 at 15 (N.D. Ill. April 6, 2005); Paul Harris Furniture Company v. Morse, 10 Ill.2d 28, 39, 139, N.E.2d 275, 282 (1956).  Here, the plaintiff seeks to recover damages for breach of warranty though it was not a party to the transaction.  This claim is not legally available to plaintiff.

8.      Finally, plaintiff's Count III, alleging breach of contract, should also be dismissed as it cannot maintain such an action.  Under Illinois law, a party may only sue to enforce an underlying contract if it is in privity with a defendant, or is an assignee or a third party beneficiary under the contract.  General Electric Capital Corp. v. Equifax Services, Inc., 797 F.Supp. 432, 445, (N.D. Ill. 1992).  Moreover, in Illinois there "is a strong presumption that parties to a contract intend the provisions of the contract apply only to them, and not third parties."  Caswell v. Zoya Int'l, 274 Ill.App.3d 1077, 1074, 654 N.E.2d 552, 554 (1st Dist. 1995).  Therefore, the only way for a third party such as the plaintiff to have standing to sue under the contract is if it were an assignee or third party beneficiary.  Id.  In the instant case, plaintiff was not a party to the contract, and is not an assignee or third party beneficiary.  Therefore, plaintiff's Count III should be dismissed.

9.      A separate memorandum of law in support of defendant's motion to dismiss has been filed with the court and is attached to this motion.

3

WHEREFORE, defendant, Jansma Construction Company, for the reasons set forth

above, request that this Honorable court grant its motion to dismiss the plaintiff's complaint with

prejudice.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.

s/ Harlene G. Matyas

By: _____

One of the attorneys for Defendant

Harlene G. Matyas – ARDC# 1796879
Brian M. Morris – ARDC# 6252424
TRIBLER ORPETT & MEYER, P.C.
225 West Washington Street, Suite 1300
Chicago, Illinois 60606
(312) 201-6400
(312) 201-6401 (fax)

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Defendant's Motion to Dismiss was served upon:

Jeffrey Charles Calabrese
Cozen O'Conner
222 S. Riverside Plaza, Suite 1500
Chicago, IL 60606
jcalabrese@cozen.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 1300, Chicago, IL 60606, prior to 5:00 p.m. on the ___3rd___ day of July, 2008, with proper postage prepaid.

s/ Harlene G. Matyas

_____

an Attorney

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST NATIONAL INSURANCE        )
COMPANY OF AMERICA as subrogee of )      FILED: MAY 08, 2008
AUNT MARTHA'S YOUTH SERVICE      )       08CV2655   LCW
CENTER,                          )       JUDGE KOLDERMAN
                                 )       MAGISTRATE JUDGE NOLAN
                Plaintiff,       )
                                 )
        v.                       )       CIVIL ACTION NO.:
                                 )
JANSMA CONSTRUCTION COMPANY,     )       JURY DEMANDED
                                 )
                Defendant.:      )

## COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, FIRST NATIONAL INSURANCE COMPANY OF AMERICA,
as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, by its undersigned attorneys,
and for its complaint against Defendant, JANSMA CONSTRUCTION COMPANY, and alleges
as follows:

## PARTIES

1.      At all times material to this action, Plaintiff, FIRST NATIONAL INSURANCE
COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER
(hereinafter "First National"), was and remains a corporation duly organized and existing under
the laws of the State of Washington, with its principal place of business located at Seattle,
Washington, which was in the insurance business, and was duly licensed to issue policies of
insurance in the State of Illinois.

2.      Plaintiff's subrogor, AUNT MARTHA'S YOUTH SERVICE CENTER (hereinafter, "Aunt Martha's"), was an ongoing business concern that owned and was renovating prior to occupancy the facility located at 5 Centre Street, Park Forest, Illinois 60466 (hereinafter, "Subject Premises").

3.      Prior to May 9, 2003, First National issued its policy of insurance No. CP0777044 to Aunt Martha's, which insurance policy provided property, among other, coverage to Aunt Martha's. At all times material to this action, said policy was in full force and effect.

4.      At all times material to this action, Defendant, JANSMA CONSTRUCTION COMPANY (hereinafter "Jansma"), was an Illinois company, with its principal place of business in Crete, Illinois, and was engaged, *inter alia*, in the business of construction and/or general contracting, among other things.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332, as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims at issue occurred within this District and defendants are subject to personal jurisdiction within this District.

## COMMON ALLEGATIONS

7.      The Subject Premises, an approximately 33,000 square-foot, wood-frame structure with a full basement was built in 1945.

8.     The Subject Premises was donated to Aunt Martha's by Roger's Enterprises d/b/a Rogers & Holland Jewelers in February 2003.

9.     Upon information and belief, Rogers Enterprises last occupied the Subject Premises in March 2000.

10.    Upon assuming ownership, Aunt Martha's formed agreements with various contractors to renovate the Subject Premises (hereinafter, "Renovation Project") including an agreement with Jansma which was to perform, general contracting, demolition, debris removal, clean up and carpentry, among other work (hereinafter, "Agreement").

11.    On May 9, 2003, during the course of the Renovation Project, the Subject Premises sustained a severe flooding loss when an electrical failure precluded a pump from removing water from the Subject Premises promoting mold growth within the Subject Premises (hereinafter, "Occurrence").

12.    On or after May 9, 2003, Jansma and the insured modified the Agreement, or formed a separate agreement, pursuant to which Jansma, for a set cost, was to remove mold-laden materials discovered during, among other occasions, Jansma's work to demolish and relocated basement walls within the Subject Premises (hereinafter, "Mold Agreement").

13.    On or after May 9, 2003, Jansma continued its demolition work on the Renovation Project pursuant to the Agreement and the Mold Agreement during which it continued to see mold and/or other fungal growth on the materials it was removing from the basement.

14.    Despite such observations on or after May 9, 2003, Jansma continued to remove the mold-laden materials without taking proper precautionary measures to preclude the spread of mold to other parts of the Subject Premises, and without taking proper remedial measures to stem

3

and/or eliminate existing mold growth on building materials that were to be re-used during the Renovation Project.

15.    On and after May 9, 2003, the Subject Premises sustained severe mold and other damage directly resulting from Jansma's conduct in paragraph 14.

16.    Aunt Martha's fulfilled all obligations and conditions of the Agreement and the Mold Agreement with Jansma.

17.    As a direct result of the aforementioned events, Aunt Martha's suffered property damage in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

18.    Pursuant to the terms and conditions of its policy of insurance with Aunt Martha's, First National made payment to Aunt Martha's for the aforementioned damages, pursuant to which First National became subrogated to the rights of Aunt Martha's.

## COUNT I
## NEGLIGENCE

19.    First National realleges Paragraphs 1-18 above, as and for this Paragraph 19 as though fully set forth herein.

20.    At all times material to this action, Jansma and its employees, representatives, agents and/or subcontractors, were under a duty to exercise reasonable care and caution consistent with other general contractors and construction contractors in good standing in the trade when performing the work alleged in Paragraphs 10 through 14, above.

21.    Notwithstanding said duties, Jansma and/or its employees, representatives, agents and/or subcontractors, breached its duties in one or more of the following ways:

     a.    Failed to remove mold-laden materials from the Subject Premises in containers that precluded mold spread within the Subject Premises;

b.    Failed to adequately dry, clean and treat wall cavities within the Subject Premises to eliminate mold and preclude future mold growth prior to re-closing the same;

c.    Failed to inspect wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

d.    Failed to test wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

e.    Failed to perform its Renovation Project work in a professional and workmanlike manner;

f.    Failed to comply with applicable codes, regulations, guidelines, policies, procedures, specifications, industry customs and/or practices during the Renovation Project;

g.    Failed to hire, supervise, train, and/or control its agents, representatives, employees and subcontractors in performing mold remediation work pursuant to the Agreement and/or Mold Agreement;

h.    Failed to consult with industrial hygienists or other health professionals, once mold was observed within the Subject Premises, to determine whether and under what condition it could continue the Renovation Project;

i.    Failed to identify and eliminate the source of water intrusion within the Subject Premises to eliminate further mold growth during the Renovation Project;

j.    Failed to develop a plan to remediate the mold within the Subject Premises, once mold was observed and once it had formed the Mold Agreement, and prior to continuing the Renovation Project;

k.    Failed to discard moldy items within the subject Premises that could not be properly dried, cleaned and treated;

l.    Failed to erect mold containments within the Subject Premises to preclude mold spread within the Subject Premises;

m.    Failed to employ a proper ventilation configuration within the Subject Premises to preclude mold spread within the Subject Premises;

n.    Installed new drywall over mold-laden, untreated and/or inadequately dried and cleaned building materials within the Subject Premises; and

o.    Was otherwise careless and negligent in performing its work.

22.    As a direct and proximate result of one or more of the aforesaid acts or omissions by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT II
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

23.    First National realleges Paragraphs 1-22 above, as and for this Paragraph 23 as though fully set forth herein.

24.    At all times material to this action, upon information and belief, Jansma, expressly warranted that its work would be performed in a reasonable and workmanlike manner,

25.    At all times material to this action, all work performed by Jansma, by and through its agents, employees, representatives and/or subcontractors, included an implied warranty that the work would be performed in a reasonable, workmanlike manner and in accordance with industry standards, and that all reasonable and customary precautions to protect the Premises against damage would be taken.

26.    Notwithstanding the aforesaid express and implied warranties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its express and/or implied warranties by performing one or more of acts and/or omissions set forth in Paragraph 21 above.

27.    Aunt Martha's provide timely and adequate notice of such breaches of warranty to Jansma.

28.    As a direct and proximate result of one or more of the aforesaid breaches of warranty by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT III
## BREACH OF CONTRACT

29.    First National realleges Paragraphs 1-28 above, as and for this Paragraph 29 as though fully set forth herein.

30.    At all times material to this action, pursuant to the Agreement and/or the Mold Agreement, Jansma was obligated to perform its work in a workmanlike manner and according to applicable codes and industry standards.

31.    Notwithstanding its contractual duties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its contractual duties by performing one or more of acts and/or omissions set forth in Paragraph 21 above and thereby failed to perform its work in a workmanlike manner and violated various codes and industry standards.

32.    As a direct and proximate result of one or more of the contractual breaches by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

FIRST NATIONAL INSURANCE COMPANY OF
AMERICA as subrogee of AUNT MARTHA'S YOUTH
SERVICE CENTER,

By:    /s/ Jeffrey C. Calabrese
       One of Its Attorneys

Jeffrey C. Calabrese
COZEN O'CONNOR
222 South Riverside Plaza, Suite 1500
Chicago, IL 60606
Tel: (312) 382-3100
Fax: (312) 382-8910

CHICAGO\61379\1\ 142886.000

527.23123-34/12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, | ) ) ) | |
| | ) | Case No. 08-cv-002655 |
| Plaintiff, | ) ) | Judge James F. Holderman |
| vs. | ) ) | Magistrate Judge Nan R. Nolan |
| JANSMA CONSTRUCTION COMPANY, | ) ) | |
| Defendant. | ) | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

Defendant, Jansma Construction Company ("Jansma") by its attorneys, Tribler Orpett &

Meyer, P.C., state the following as its memorandum of law submits this memorandum of law in

support of its motion to dismiss:

**<u>INTRODUCTION</u>**

On or about May 8, 2008, First National Insurance Company of America ("First

National") as subrogee of Aunt Martha's Youth Service Center ("Aunt Martha's") filed a

complaint against Jansma. The complaint seeks to hold Jansma liable for damages arising out of

a renovation project in which the plaintiff's subrogor Aunt Martha's contracted with Jansma for

the performance of work pursuant to an agreement. (See copy of plaintiff's complaint attached

as **Exhibit A**.) First National, a corporation duly organized under the laws of the State of

Washington, filed this complaint on behalf of Aunt Martha's, an Illinois corporation. First

National seeks relief against Jansma for 1) negligence, 2) breach of expressed and/or implied

warranty, and 3) breach of contract.



### ARGUMENT

Fed. R. Civ. P. 12 provides that a defendant may raise certain defenses by motion in lieu

of answer.  In evaluating a motion to dismiss the court assumes that the factual allegations of the

complaint are true.  Arabian v. Nelson, 507 U.S. 3049, 351 (1993).  "Federal Courts are courts of

limited jurisdiction, constrained by the limits of what Congress has chosen to invest in them,"

Bank of Nova Scotia v. S&W Berisforz, Inc., 753 F.Supp. 237, 238 (in the Illinois 1990).  In this

case, it is apparent from the face of the complaint that this court lacks subject matter jurisdiction

over the case as the plaintiff erroneously seeks diversity jurisdiction.  Fed. R. Civ. P. 17 requires

that only the real party in interest may prosecute an action.  Fidelity National Title Ins. v.

Intercounty National Title Ins., 2001 WL 58949 (N.D. 2001).  The plaintiff has failed to allege

that a complete subrogation has occurred.  In the absence of a complete subrogation, the plaintiff,

as an insurer, stands in the shoes of its insured and has no greater rights than that of its insured.

Since Aunt Martha's is an Illinois corporation and Jansma an Illinois corporation, there can be no

diversity.

Moreover, even assuming that First National is the real party in interest, the complaint

clearly fails to state claims upon which relief may be granted.  The plaintiff ignores the

*Moorman Doctrine* in seeking to recovery purely economic damages in tort and under multiple

theories in contract including breach of express warranty, breach of implied warranty, and breach

of contract even though the plaintiff was not a party to any agreement or contract and has no

standing to sue.  Therefore, the plaintiff's complaint fails to state a basis upon which relief can

be granted and should be dismissed with prejudice.

**A.    THE COMPLAINT MUST BE DISMISSED BECAUSE THE PLAINTIFF IS NOT THE REAL PARTY IN INTEREST AND THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS MATTER.**

Plaintiff asserts that this court has jurisdiction over this matter pursuant to 28 USC § 1332. Diversity jurisdiction is based on the citizenship of the real party in interest. Navaro Savings Ass'n v. Lee, 464 U.S. 58 (1980).

When subject matter jurisdiction is asserted based on diversity of citizenship, there must be complete diversity. "The plaintiff must satisfy the diversity requirements for the defendant or else encounter dismissal". Camel v. Hill-Rom Company, Inc., 108 F.3d 799, 805 (7th Cir. 1997). In the present case, the plaintiff asserts as subrogee of Aunt Martha's that it is entitled to seek the jurisdiction of this court under the diversity statue. This claim is erroneous as this court has previously found that under Fed. R. Civ. P. 17(a) every action must be prosecuted by the real party in interest. Krueger v. Cartwright, 996 F.2d 928, 931 (7th Cir. 1993). In this case, the plaintiff, a Washington corporation, has not made sufficient allegations to show it is the real party in interest despite being the alleged insurer of Aunt Martha's.

In insurance cases, "the insurer will be found to be the real party in interest when there has been a complete subrogation of insured's rights to him." Amour Pharmaceuticals Company v. Home Insurance Company, 60 FRD 592, 594 (N.D. Ill. 1973); See United States v. Aetna Surety Company, 338 U.S. 366, 380-81 (1949). Complete payment of insured's claims fulfills the subrogation requirement. Id. Clearly Aunt Martha's, as an Illinois corporation, could not sue Jansma, also an Illinois corporation, and seek diversity jurisdiction of this court. In this case, plaintiff seeks to avoid state litigation by alleging that it is the real party in interest and stands in the shoes of its insured. However, a review of the plaintiff's complaint finds no allegation that a

3

complete subrogation has occurred, and therefore the plaintiff's as the real party in interest is not of record and its complaint should be dismissed.

In Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 2001 WL 58949 (N.D. Ill.), the Court last considered the very issue that arises in the instant case. In Fidelity, an insurer brought suit against a defendant for the recovery of loses rising out of a breach of a real estate contract. The plaintiff in Fidelity, as in the case at bar, sought diversity jurisdiction as a subrogee of its insured. Id. The Defendants in the matter filed a motion to dismiss arguing that the Plaintiff was not a real party in interest.

In denying the motion to dismiss, the court found that there was evidence that a "complete subrogation" had occurred. The Court found that the plaintiff had pleading sufficient allegations to establish itself as the real party in interest. Id. at *6. The Court found specifically that the plaintiff had plead that it had "(1) deposited funds into the account of escrow depositors and (2) that the plaintiff had taken assignment of all their right, title and interest in their claims." Id. In the instant complaint, the plaintiff made no such allegations that it was entitled to stand in the shoes of its insured due to a complete subrogation. Consequently, in the absence of such allegations, First National's status may not be that of a real party in interest under Fed. R. Civ. P. 17(a). Therefore, this court should find that there can be no diversity and the complaint should be dismissed.

**B.    EVEN IF JURISDICTION IS FOUND COUNT II AND III OF PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THEY FAIL TO STATE ANY CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test sufficiency of the complaint, not to decide the merits of the case. Triad Associates Incorporated v. Chicago Housing Authority, 892 F.2d 583, 586 (7th Cir. 1989). The complaint must be dismissed for

failure to state a claim when "it appears to be any doubt that the plaintiff can prove any facts in support of its claim that would demonstrate an entitlement to relief. Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). A complaint must contain sufficient facts to state a claim as a matter of law and mere conclusionary allegations are insufficient to survive a motion to dismiss. *Id.* Dismissal is granted only if is clear there is no set of facts that there plaintiff can prove which entitle plaintiff to relief. Connelly v. Gibson, 355 U.S. 41, 45-46, 78 SCT 99, 1957; Kunik v. Racine County Wisconsin, 1946 F.2d 1574, 1579 (7th Cir. 1991). In this case, Count I seeks to recover purely economic damages arising out of the alleged negligence of the defendant. This Count should be dismissed because under Illinois law, the *Moorman Doctrine* specifically precludes a plaintiff from recovering such damages. Moorman Mfg. Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443, 61 Ill.Dec. 746 (1982). In addition, Count II and Count III seek damages arising out of a contract to which the plaintiff does not have standing to sue under since it was not a party to the contract, an assignee or third party beneficiary. The plaintiff was also not in privity with the defendant which is required to recover for damages related to the breach of express and implied warranties.

I.   **The Plaintiff is barred from recovering damages arising out of tort under the Moorman Doctrine.**

Count I of plaintiff's complaint seeks to recover solely economic damages arising out of the negligence of the defendant. Illinois law holds that in the absence of personal injury, damages for purely economic loss are generally not recoverable in tort cases. Moorman Mfg. Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E.2d 443 (1982). In this case, plaintiff's Count I should be dismissed as it seeks, in violation of the *Moorman Doctrine,* damages to its subrogor's premises as a result of the alleged negligence of defendant, contractor. (See Exhibit A at paragraphs 20-21).

In Moorman, the defendant sold the plaintiff a grain storage tank that was poorly made. The tank exploded some time after the plaintiff purchased it and he sued the defendant alleging he suffered economic damages due to the negligent design of the tank. 91 Ill. 2d at 82, 435 N.E.2d at 448. The Illinois Supreme Court created the bright line rule, known as the Moorman Doctrine, when it ruled that the plaintiff, as a disappointed consumer, could not recover damages in negligence for purely economic loss. Id. The court defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits — without any claim of personal injury or damage to other property. Id.; *see also* Trans States Airlines v. Pratt & Whitney Canada, Inc. 177 Ill. 2d 21, 42, 682 N.E.2d 45, 54, 224 Ill. Dec. 484, 493 (1997) (holding that the test for what is other property is what was bargained for. In Trans States, an airplane engine malfunctioned, and the court concluded that the damage to the airframe due to the engine failure is not "other" property damage because the subject of the bargain was for the entire aircraft, not just the engine). The *Moorman* holding is based upon the premise that contract law and the Uniform Commercial Code offer the appropriate remedies for economic losses sustained by disappointed commercial expectations when there is no injury either to any person or to other property. 91 Ill. 2d at 86, 435 N.E.2d at 450.

In Chicago Heights Venture v. Dynamite Nobel of America, 782 F.2d 723 (7th Cir. 1986), the Court upheld the dismissal of a negligence claim against a company that installed roofs on apartment buildings. In that case, plastic sheeting material tore away from the roof of the buildings. The sheeting later entirely separated from the roof and fell to the ground during a windstorm. As a result of these incidents, water leaked into the buildings, damaging ceilings and walls. The ripping force of the separating sheeting loosened the bricks of the buildings. The Seventh Circuit applied Moorman and determined that the losses involved were purely economic

6

in nature even though the complaint alleged loss to other property as well.

In the instant case, plaintiffs allege faulty or deficient work product, without any claim of personal injury or damage to other property. Therefore, plaintiff's claim for damages arising out of the alleged negligence of the defendant is barred by the *Moorman Doctrine*. Therefore, plaintiff's complaint should be dismissed.

## II.    The Complaint Fails to State a Claim for Breach of Express Warranty.

The Plaintiff alleges in Count II of its complaint that Jansma breached an expressed warranty with its insured. The count is defective for several reasons and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). When a federal court sits in diversity jurisdiction, state court precedent on issues of state law are binding. RAR Incorporated v. Turner Diesel Ltd., 107 F.3d 1272, 1276 (7th Cit. 1997). It is unclear whether plaintiff is pursuing a claim for breach of express written warranty or breach of another express but unwritten warranty. The plaintiff's complaint simply alleges that defendant "expressly warranted that its work would be performed in a reasonable and workmanlike manner." (See Exhibit A at paragraph 24). The claim should be dismissed in either case, however, because plaintiff fails to state a claim under either theory. First, Illinois case law holds that ". . . in general, because an express warranty is an action in contract, a party must be in privity to the contract before bringing any breach of express warranty claim." Canadian Pac. Company v. Williams-Hayword Protective Coatings, No. 02 C 8800, 205 WL 782698 at 15 (N.D. Ill. April 6, 2005). In this case, plaintiff seeks to hold Jansma liable for breach of an alleged express warranty related to an agreement between its insured and Jansma, even though plaintiff was not a party to agreement. Consequently, in the absence of such privity, plaintiff's claim for breach of express warranty should be dismissed.

III.    **The Complaint Fails to State a Claim for Breach of Implied Warranty.**

Under Illinois law, privity of contract is required to support a claim for breach of implied warranty. Stewart Warner Corp. v. Burns Intern. Sec. Services, Inc., 343 F.Supp 953 (N.D. 1972); *see also* Suvada v. White Motor Co., 210 N.E.2d 182, 184 (Ill. 1965)(holding that privity of contract is required to maintain actions on warranties). Privity of contract is a relationship that exists between two contracting parties. Here, the undisputed facts as set forth in the plaintiff's complaint show that the plaintiff, as subrogee of Aunt Martha's, never had a contractual relationship whatsoever with defendant. In the absence of such privity between plaintiff and defendant, there can be no breach of implied warranty. Therefore, plaintiff's Count II and allegation alleging breach of implied warranty should be dismissed as well.

In Stewart Warner Corp. v. Burns Int'l Security Serves, Inc., a plaintiff lessee of a building, damaged by fire sued a defendant whose employees allegedly caused the fire. Id. at 953. The plaintiff sued for breach of implied warranty under a theory that the defendant breach an implied warranty with the lessor of the building. Id. The Court found that the plaintiff was not a party to the contract and therefore could not maintain an action for breach of implied warranty against the defendant. Id. In the case at bar, there is no contractual relationship between the plaintiff and the defendant. Therefore, the Plaintiff is barred from recovering damages arising out of the alleged breach of implied warranty.

In Bob Evans Farms, Inc. v. Excellent Builders, Inc., 1988 WL 80137 (N.D. Ill. 1988), the plaintiff sued a building subcontractor for damages arising out of a renovation of a restaurant. The plaintiff, as in our case, sought damages for breach of implied warranty, against a third party with whom it never contracted, to perform services. Id. While the Court found that a building contractor could be sued for breach of implied warranty in connection with services performed

8

on a building, privity of contract must exist between the parties. Id. In the absence of such

privity, the plaintiff could not maintain an action for breach of implied warranty. Id.

In Board of Education v. A, C and S Incorporated, 131 Ill.2d 428, 456 N.E.2d 580

(1989), involved a claim for property damage based on a breach of implied warranty. The Court

held that the plaintiff must allege privity of contract in the allegations of its complaint to state a

valid cause of action for breach of implied warranty. Id. It is evident that the named plaintiff in

the case at bar was not in privity with the defendant. Consequently, plaintiff's Count II alleging

breach of implied warranty fails and should be dismissed by this court.

**III.    Plaintiff's Count III Alleging Breach of Contract Fails to State a Claim Upon which Relief Should be Granted and Should also be Dismissed.**

Plaintiff alleges in Count III of its complaint that Jansma breached a contract with its

subrogee, Aunt Martha's. This Count is defective and should be dismissed because it fails to

state a claim upon which relief can be granted. Under Illinois law, plaintiff is required to plead

and prove the following as central elements for a breach of contract claim:

1.    Existence of a valid enforceable contract, including allegations of offer

acceptance, and consideration;

2.    Performance by plaintiff of all contractual conditions required of him;

3.    Breach of contract by the defendant;

4.    A resulting injury to the plaintiff.

Gallagher Corporation v. Russ, 309 Ill.App.3rd 192, 199; 721 N.E.2d 605 (1st Dist. 1999).

"Generally, only a party to a contract, or one in privity with a party, may enforce a contract,

except that a third party beneficiary or assignee may sue for a breach of a contract made for his

benefit." Wilde v. 1st Savings & Loan Ass'n of Wilmette, 134 Ill.App.3d 3d 722, 480 N.E.2d

1236 (1st Dist. 1985); Bescor, Inc. v. Chgo. Title & Trust Co., 113 Ill.App.3d 65, 446 N.E.2d

9

1209, 1213 (2nd Dist. 1983). "The term privity denotes mutual or successive relationship to the same rights of property." Keith v. Thayer, 181 Ill.App. 370, 372 (1913).

While a contract can be enforced by a party, an assignee, and a third party beneficiary to a contract, the plaintiff, an insurance company, is not in any of these positions. E.B. Harper & Co., Inc. v. Nortek, Inc., 104 F.3d 913 (7th Cir. 1997); David v. J. Elrod Realtors on Devon, Inc., 75 Ill.App.3d 449, 394 N.E.2d 583 (1st Dist. 1979); Sabath v. Mansfield, 60 Ill.App.3d 1008, 377 N.E.2d 161 (1st Dist. 1978); Carson Pirie Scott & Co. v. Parrett, 346 Ill.252, 178 N.E.2d 498 (1st Dist. 1931). The plaintiff has no standing to sue for breach of contract and is not in privity with the defendant. Plaintiff has no contract rights against Jansma, though it may be the subrogee of Aunt Martha's. While the plaintiff contends that it is entitled to seek damages for breach of contract as the subrogee of Aunt Martha's, this argument fails because the plaintiff has no standing to seek damages under the contract as the subrogee of its insured.

In Illinois Housing Development Authority v. M-Z Const. Corp., 110 Ill.App.3d 129, 441 N.E.2d 1179 (1st Dist. 1982), the Court considered whether an alleged subrogee was entitled to seek damages for a breach of contract when it was not in privity with the defendant. Id. In Illinois Housing, Illinois Housing Development Authority, owner, sued an architectural firm and architect for breach of contract, even though they were not in privity with the defendant. Id. In reviewing the allegations in the plaintiff's complaint, the Court found that the plaintiff failed to allege facts sufficient to demonstrate how it had standing to sue for breach of contract and dismissed the plaintiff's cause of action for breach of contract. Id. at 142. Similarly, in the case at bar, the plaintiff has failed to allege facts sufficient to demonstrate either that it was a party to the contract, an assignee, or a third party beneficiary. Therefore, Count III of plaintiff's

complaint erroneously attempts to allege a cause of action for breach of contract and said Count

should be dismissed by this court.

## CONCLUSION

Based on forgoing, defendant Jansma Construction Company respectfully request this

court dismiss with prejudice plaintiff's cause of action.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.


s/ Harlene G. Matyas

By: _____

One of the attorneys for Defendant


Harlene G. Matyas – ARDC# 1796879
Brian M. Morris – ARDC# 6252424
TRIBLER ORPETT & MEYER, P.C.
225 West Washington Street, Suite 1300
Chicago, Illinois 60606
(312) 201-6400
(312) 201-6401 (fax)

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Defendant's Memorandum in Support of its Motion to Dismiss was served upon:

Jeffrey Charles Calabrese
Cozen O'Conner
222 S. Riverside Plaza, Suite 1500
Chicago, IL 60606
jcalabrese@cozen.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 1300, Chicago, IL 60606, prior to 5:00 p.m. on the _3rd_ day of July, 2008, with proper postage prepaid.

s/ Harlene G. Matyas

_____

an Attorney

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST NATIONAL INSURANCE )
COMPANY OF AMERICA as subrogee of )
AUNT MARTHA'S YOUTH SERVICE )
CENTER, )
                         Plaintiff, )
                   )
         v. )
                   )
JANSMA CONSTRUCTION COMPANY, )
                   )
             Defendant. )

FILED: MAY 08, 2008
08CV2655   LCW
JUDGE HOLDERMAN
MAGISTRATE JUDGE NOLAN

CIVIL ACTION NO.:

JURY DEMANDED

## COMPLAINT FOR DAMAGES

NOW COMES Plaintiff, FIRST NATIONAL INSURANCE COMPANY OF AMERICA

as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, by its undersigned attorneys,

and for its complaint against Defendant, JANSMA CONSTRUCTION COMPANY, and alleges

as follows:

## PARTIES

1.     At all times material to this action, Plaintiff, FIRST NATIONAL INSURANCE

COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER

(hereinafter "First National"), was and remains a corporation duly organized and existing under

the laws of the State of Washington, with its principal place of business located at Seattle,

Washington, which was in the insurance business, and was duly licensed to issue policies of

insurance in the State of Illinois.

2.     Plaintiff's subrogor, AUNT MARTHA'S YOUTH SERVICE CENTER (hereinafter, "Aunt Martha's"), was an ongoing business concern that owned and was renovating prior to occupancy the facility located at 5 Centre Street, Park Forest, Illinois 60466 (hereinafter, "Subject Premises").

3.     Prior to May 9, 2003, First National issued its policy of insurance No. CP0777044 to Aunt Martha's, which insurance policy provided property, among other, coverage to Aunt Martha's. At all times material to this action, said policy was in full force and effect.

4.     At all times material to this action, Defendant, JANSMA CONSTRUCTION COMPANY (hereinafter "Jansma"), was an Illinois company, with its principal place of business in Crete, Illinois, and was engaged, *inter alia*, in the business of construction and/or general contracting, among other things.

### JURISDICTION AND VENUE

5.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332, as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6.     Venue is proper in this district pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims at issue occurred within this District and defendants are subject to personal jurisdiction within this District.

### COMMON ALLEGATIONS

7.     The Subject Premises, an approximately 33,000 square-foot, wood-frame structure with a full basement was built in 1945.

8.     The Subject Premises was donated to Aunt Martha's by Roger's Enterprises d/b/a Rogers & Holland Jewelers in February 2003.

9.     Upon information and belief, Rogers Enterprises last occupied the Subject Premises in March 2000.

10.     Upon assuming ownership, Aunt Martha's formed agreements with various contractors to renovate the Subject Premises (hereinafter, "Renovation Project") including an agreement with Jansma which was to perform, general contracting, demolition, debris removal, clean up and carpentry, among other work (hereinafter, "Agreement").

11.     On May 9, 2003, during the course of the Renovation Project, the Subject Premises sustained a severe flooding loss when an electrical failure precluded a pump from removing water from the Subject Premises promoting mold growth within the Subject Premises (hereinafter, "Occurrence").

12.     On or after May 9, 2003, Jansma and the insured modified the Agreement, or formed a separate agreement, pursuant to which Jansma,  for a set cost, was to remove mold-laden materials discovered during, among other occasions, Jansma's work to demolish and relocated basement walls within the Subject Premises (hereinafter, "Mold Agreement").

13.     On or after May 9, 2003, Jansma continued its demolition work on the Renovation Project pursuant to the Agreement and the Mold Agreement during which it continued to see mold and/or other fungal growth on the materials it was removing from the basement.

14.     Despite such observations on or after May 9, 2003, Jansma continued to remove the mold-laden materials without taking proper precautionary measures to preclude the spread of mold to other parts of the Subject Premises, and without taking proper remedial measures to stem

3

and/or eliminate existing mold growth on building materials that were to be re-used during the Renovation Project.

15.    On and after May 9, 2003, the Subject Premises sustained severe mold and other damage directly resulting from Jansma's conduct in paragraph 14.

16.    Aunt Martha's fulfilled all obligations and conditions of the Agreement and the Mold Agreement with Jansma.

17.    As a direct result of the aforementioned events, Aunt Martha's suffered property damage in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

18.    Pursuant to the terms and conditions of its policy of insurance with Aunt Martha's, First National made payment to Aunt Martha's for the aforementioned damages, pursuant to which First National became subrogated to the rights of Aunt Martha's.

## COUNT I
## NEGLIGENCE

19.    First National realleges Paragraphs 1-18 above, as and for this Paragraph 19 as though fully set forth herein.

20.    At all times material to this action, Jansma and its employees, representatives, agents and/or subcontractors, were under a duty to exercise reasonable care and caution consistent with other general contractors and construction contractors in good standing in the trade when performing the work alleged in Paragraphs 10 through 14, above.

21.    Notwithstanding said duties, Jansma and/or its employees, representatives, agents and/or subcontractors, breached its duties in one or more of the following ways:

    a.    Failed to remove mold-laden materials from the Subject Premises in containers that precluded mold spread within the Subject Premises;

b.    Failed to adequately dry, clean and treat wall cavities within the Subject Premises to eliminate mold and preclude future mold growth prior to re-closing the same;

c.    Failed to inspect wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

d.    Failed to test wall cavities within the Subject Premises for mold prior to re-closing the same to ensure that they were dry and mold-free;

e.    Failed to perform its Renovation Project work in a professional and workmanlike manner;

f.    Failed to comply with applicable codes, regulations, guidelines, policies, procedures, specifications, industry customs and/or practices during the Renovation Project;

g.    Failed to hire, supervise, train, and/or control its agents, representatives, employees and subcontractors in performing mold remediation work pursuant to the Agreement and/or Mold Agreement;

h.    Failed to consult with industrial hygienists or other health professionals, once mold was observed within the Subject Premises, to determine whether and under what condition it could continue the Renovation Project;

i.    Failed to identify and eliminate the source of water intrusion within the Subject Premises to eliminate further mold growth during the Renovation Project;

j.    Failed to develop a plan to remediate the mold within the Subject Premises, once mold was observed and once it had formed the Mold Agreement, and prior to continuing the Renovation Project;

k.    Failed to discard moldy items within the subject Premises that could not be properly dried, cleaned and treated;

l.    Failed to erect mold containments within the Subject Premises to preclude mold spread within the Subject Premises;

m.    Failed to employ a proper ventilation configuration within the Subject Premises to preclude mold spread within the Subject Premises;

n.    Installed new drywall over mold-laden, untreated and/or inadequately dried and cleaned building materials within the Subject Premises; and

o.    Was otherwise careless and negligent in performing its work.

22.    As a direct and proximate result of one or more of the aforesaid acts or omissions by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT II
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES

23.    First National realleges Paragraphs 1-22 above, as and for this Paragraph 23 as though fully set forth herein.

24.    At all times material to this action, upon information and belief, Jansma, expressly warranted that its work would be performed in a reasonable and workmanlike manner,

25.    At all times material to this action, all work performed by Jansma, by and through its agents, employees, representatives and/or subcontractors, included an implied warranty that the work would be performed in a reasonable, workmanlike manner and in accordance with industry standards, and that all reasonable and customary precautions to protect the Premises against damage would be taken.

26.    Notwithstanding the aforesaid express and implied warranties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its express and/or implied warranties by performing one or more of acts and/or omissions set forth in Paragraph 21 above.

27.    Aunt Martha's provide timely and adequate notice of such breaches of warranty to Jansma.

28.    As a direct and proximate result of one or more of the aforesaid breaches of warranty by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

## COUNT III
## BREACH OF CONTRACT

29.    First National realleges Paragraphs 1-28 above, as and for this Paragraph 29 as though fully set forth herein.

30.     At all times material to this action, pursuant to the Agreement and/or the Mold Agreement, Jansma was obligated to perform its work in a workmanlike manner and according to applicable codes and industry standards.

31.     Notwithstanding its contractual duties, Jansma, by and through its agents, employees, representatives and/or subcontractors, breached its contractual duties by performing one or more of acts and/or omissions set forth in Paragraph 21 above and thereby failed to perform its work in a workmanlike manner and violated various codes and industry standards.

32.     As a direct and proximate result of one or more of the contractual breaches by Jansma, Aunt Martha's suffered property damage, and for which damage, First National paid Aunt Martha's in excess of $75,000.00.

WHEREFORE, Plaintiffs FIRST NATIONAL INSURANCE COMPANY OF AMERICA as subrogee of AUNT MARTHA'S YOUTH SERVICE CENTER, respectfully pray that this Honorable Court enter judgment in their favor and against Defendant, JANSMA CONSTRUCTION COMPANY, in an amount to be determined at trial but no less than $75,000.00, together with interest and the costs of this action, and for such other relief as may be ordered by the Court.

FIRST NATIONAL INSURANCE COMPANY OF
AMERICA as subrogee of AUNT MARTHA'S YOUTH
SERVICE CENTER,

By:     /s/ Jeffrey C. Calabrese
            One of Its Attorneys

Jeffrey C. Calabrese
COZEN O'CONNOR
222 South Riverside Plaza, Suite 1500
Chicago, IL  60606
Tel: (312) 382-3100
Fax: (312) 382-8910

CHICAGO\51379\1\  142886.000